UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GARY HART                                          CIVIL ACTION

VERSUS                                              NO. 25-1548

SUNBELT SUPPLY, L.L.C.                    SECTION "R" (1)

**ORDER AND REASONS**

Before the Court are two summary judgment motions.  Plaintiff Gary Hart moved for partial summary judgment on his state law claim under the Louisiana Wage Payment Act.[1]  Sunbelt moved for summary judgment on all of Hart's claims.[2]  For the following reasons, the Court grants Sunbelt's motion for summary judgment in part and Hart's motion for summary judgment in part.

## I.    BACKGROUND

The undisputed facts are as follows.  Gary Hart began working for Sunbelt[3] in July 2017.[4]  When Hart joined Sunbelt, he received base compensation, a signing bonus, and incentive compensation.[5]  The incentive

---

[1]    R. Doc. 25.
[2]    R. Doc. 26.
[3]    For simplicity, the Court refers to Hart's employer as Sunbelt throughout.  Sunbelt Supply co. is a fictitious name used by FloWorks USA L.P.  R. Doc. 10.
[4]    R. Doc. 32-4 at 2.
[5]    *Id.*

1

compensation was a return-on-invested capital plan tied to the branch sales performance.[6]  Hart's offer letter includes language that "[Hart] must be actively employed on the date [incentive] payments are made to receive the award.  [Sunbelt] reserves the right to change, revise or terminate the incentive plan at any time."[7]  As of January 2024, Hart had informed Scott Jackson, the President of Sunbelt, that he intended to retire in January 2025.[8]

From January 2024 until his retirement in January 2025 at the age of 67, Hart served as one of two Regional Directors for Sunbelt.[9]  In that role, Hart received a base salary and incentive-based variable compensation.[10]  In March 2024, Sunbelt modified the incentive compensation plan.[11]  The incentive compensation plan changed from the return-on-invested capital plan to a sales contribution percentage plan.[12]  The March 2024 incentive compensation plan letter included language that Sunbelt could "change revise, or terminate" the incentive-based compensation at any time and "make changes to individual payouts as warranted."[13]  The incentive plan contained

---

[6]  *Id.*
[7]  R. Doc. 26-9 at 2.
[8]  R. Doc. 26-4 at 39.
[9]  R. Doc. 32-2 at 1.
[10]  R. Docs. 32-2; 32-3.
[11]  R. Doc. 26-10 at 2.
[12]  *Id.*
[13]  *Id.*

language that the "employee's eligibility to earn any future payment under any plan shall cease on the final day of employment, except to the extent prohibited by applicable law."[14]

On November 1, 2024, Hart sent a formal, written notice of his intent to retire on January 31, 2025.[15] Ten days later, on November 11, 2024, Jackson informed Hart on a phone call that Hart's incentive compensation to be paid for October, November, and December 2024[16] would be $5,000 instead of the sales contribution percentage.[17] Hart emailed Jackson following the phone call, clarifying the change in incentive contribution.[18] Jackson confirmed the change and noted that Hart would not be paid incentive compensation for January because he would no longer be employed with Sunbelt on the payout date in February 2025.[19] Hart continued in his position as Regional Director until his retirement. Three days before his retirement, he emailed Jackson, demanding full compensation under the incentive-based plan for October, November, and December 2024, and January 2025,

---

[14]    *Id.*

[15]    R. Doc. 32-4.

[16]    The Court throughout refers to payments "for October," etc. The payment "for October 2024" is the payment that would be made in November 2024 based on October's sales data in accordance with Sunbelt's payment policies.

[17]    R. Doc. 32-7 at 4.

[18]    R. Doc. 32-5 at 2.

[19]    R. Doc. 26-11 at 3.

seeking $36,769.02 plus a commission from January sales once known.[20] Jackson did not respond to that email.

On March 6, 2025, Hart filed a charge of discrimination with the EEOC for age discrimination. The EEOC issued a right to sue letter to Hart on June 26, 2025.[21] Hart then sued in this Court on July 29, 2025, asserting federal question jurisdiction over his federal age discrimination claims.[22] In addition, Hart brought claims under the Louisiana Employment Discrimination Law and the Louisiana Wage Payment Act, asserting supplemental jurisdiction.[23]

Before the Court are cross-motions for summary judgment. Sunbelt has moved for summary judgment on each of Hart's claims.[24] Hart has moved for partial summary judgment as to his Louisiana Wage Payment Act claim only.[25] The Court considers the motions below.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[20]    R. Doc. 32-9 at 1.
[21]    R. Doc. 1 at 2.
[22]    R. Doc. 1.
[23]    *Id.*
[24]    R. Doc. 26.
[25]    R. Doc. 25.

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court considers the evidence in the record without making credibility determinations or weighing the evidence.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party.  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).  If the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine dispute of material fact.  *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the material in the record capable of being made admissible is insufficient with respect to an essential element of the nonmoving party's claim.  Fed. R. Civ. P. 56(c); s*ee Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to material capable of being made admissible, set out specific facts showing that a genuine dispute exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution.  *See, e.g., id.*

5

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable factfinder to return a verdict in favor of the moving party." *Id.* at 1265.

## III.  DISCUSSION

### a. Age Discrimination Claim

Hart brings a claim under the Age Discrimination in Employment Act (ADEA), which makes it unlawful for an employer to discriminate against an individual with respect to his compensation on account of his age. 29 U.S.C. § 623(a)(1).

In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)). If, as here, "an inference is required for evidence to be probative as to an employer's discriminatory animus, the evidence is

circumstantial, not direct," and subject to the burden-shifting analysis under *McDonnell Douglas.  Id.*; *see also Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 508 (5th Cir. 2024) (affirming the application of the *McDonnell Douglas* burden-shifting framework on summary judgment); *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 304-05 (5th Cir. 2023); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The Fifth Circuit applies the *McDonnell Douglas* framework at summary judgment.  *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011); *see also Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308 n.2 (2025) (assuming without deciding that the *McDonnell Douglas* framework applies at the summary judgment stage of litigation).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case.  *Id.*  The burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action."  *Id.* (citing *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 811 (5th Cir. 2016)).  If the defendant does so, the court considers whether the plaintiff has produced "evidence from which a jury could conclude that the employer's articulated reason is pretextual."  *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016).

### 1. Prima Facie Case

To establish a prima facie case of age discrimination, a plaintiff must show: (1) an adverse employment action; (2) that he was qualified for the position; (3) that he was within the protected class at the time of the adverse employment action; and (4) that the adverse employment action was because of his membership in the protected class. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). At this stage, the parties do not dispute Hart's membership in a protected class, his qualifications for the position, or that the reduction of Hart's incentive compensation was an adverse action.[26] It is only the fourth element—whether the incentive compensation reduction was because of Hart's membership in a protected class— that is at issue.

Sunbelt asserts that the change in Hart's compensation was not a result of a discriminatory intent or motive. Hart must point to evidence in the record that creates a genuine dispute of material fact as to whether age was the "but-for" cause "of the challenged employer decision"; that is, whether Sunbelt decreased his variable compensation because of a discriminatory intent or motive. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009)).

---

[26]    R. Doc. 26-2 at 9.

Here, Hart points to the undisputed fact that Bubba Robinson—the other, seven-years-younger Regional Director for Sunbelt—did not have his compensation changed from the variable incentive plan.[27]  Hart asserts that because he was treated differently than a similarly situated younger employee, he has created a genuine dispute of material fact as to whether his age was a but-for cause in the compensation plan change.

Sunbelt asserts that Robinson's continued receipt of the incentive payments does not give rise to an inference of discrimination.  They reason that comparator Robinson was 60 at the time of the challenged employment action and therefore also a member of the protected class.[28]  But having a comparator outside of the protected class is not a requirement of the *McDonnell Douglas* framework.  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).  The question is whether the comparator was "substantially younger."  *Id.* at 313; *see also Flanner v. Chase Inv. Servs Corp.*, 600 F. App'x 914, 918 (5th Cir. 2015).  While there is not a bright-line rule, the Fifth Circuit has found five and six-year age gaps sufficient to establish a plaintiff's prima facie case.  *Flanner*, 600 F. App'x at 919.  The seven-year age gap here is sufficient, without more, to support an inference of age discrimination.

---

[27]    R. Doc. 32-7 at 7.
[28]    R. Doc. 26-2 at 10.

9

Outside of the age difference, Sunbelt notes that Robinson is "functionally identical" to Hart.[29]  The Court thus finds that Hart has pointed to sufficient evidence to meet his summary judgment burden as to his prima facie case.

## 2. Pretext

After finding that a plaintiff has met the requirements to make a prima facie case, the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).  If the defendant does so, the court is to consider whether the plaintiff has produced "evidence from which a jury could conclude that [the defendant's] articulated reason is pretextual." *Nall*, 917 F.3d at 342 (quoting *Cannon*, 813 F.3d at 590).  The ultimate issue is whether the employer reasonably believed its stated reason for termination and whether the decision to discharge the employee was based on that belief. *Waggoner v. City of Garland*, 987 F.2d 1160, 1165-66 (5th Cir. 1996).

To meet its burden, Sunbelt must clearly set forth, through the introduction of evidence capable of being made admissible, the reasons for its challenged employment decision. *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 900 (5th Cir. 2012).  Sunbelt has done so.  Sunbelt has articulated "a

---

[29]    R. Doc. 26-2 at 10.

legitimate, non-discriminatory reason" for the adverse employment action. *Nall*, 917 F.3d at 341. Jackson testified in his deposition that he adjusted Hart's compensation because Hart was no longer engaged in his job or in his role as a manager: not attending meetings, traveling to office sites, engaging with his direct reports, or sending a consistent volume of email.[30] Poor leadership is a legitimate, nondiscriminatory reason for terminating a plaintiff under Fifth Circuit precedent; it therefore also is a legitimate, nondiscriminatory reason to reduce incentive compensation payment. *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 (5th Cir. 1997); *Casarez v. Burlington N./Santa Fe. Co.*, 193 F.3d 334, 337 (5th Cir. 1999).

The Court then considers whether the plaintiff has produced "evidence from which a jury could conclude that [the defendant's] articulated reason is pretextual" or unworthy of credence. *Nall*, 917 F.3d at 342. "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001) (quoting *E.E.O.C. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1443-44 (5th Cir. 1995)). A reason is not a pretext for discrimination unless it is shown that the reason is false and that discrimination was the real

---

[30]    R. Doc. 26-4 at 43, 58, 61.

reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). At this stage, Hart must point to evidence that creates a genuine dispute of material fact that the defendant's articulated reason for the challenged employment decision is pretextual or unworthy of credence.

Hart has not pointed to evidence showing that Sunbelt's articulated reason for the challenged employment decision is pretextual. Plaintiff points to four pieces of evidence to support pretext: that Hart's incentive compensation was reduced when Robinson's was not; Jackson's "old timers" comment; the timing of the challenged employment decision; and Sunbelt's "shifting reasons" for reducing his compensation. None of this evidence creates a genuine dispute of fact that Sunbelt's articulated reason for the change was false nor that the real reason was discrimination.

First, as to Robinson. Hart asserts that Robinson was similarly situated and thus the only reason to change Hart's pay but not Robinson's is age discrimination. To show an employee was "similarly situated," a plaintiff must show that his coworker "was treated more favorably under nearly identical circumstances." *Carter v. Local 556*, 156 F.4th 459, 483 (5th Cir. 2025) (quoting *Alkhawaldeh*, 851 F.3d at 426). The plaintiff and comparator must be "similarly situated from the perspective of their employer at the time of the relevant employment decisions." *Perez v. Tex. Dep't of Crim. Just.*, 395

F.3d 206, 210 (5th Cir. 2004).  A "variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications." *Herster v. Bd. of Supervisors*, 887 F.3d 177, 185 (5th Cir. 2018).  The inquiry is case-specific and requires the court to consider the "full variety" of factors that an objectively reasonable "decisionmaker would have found relevant in making the challenged decision." *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012).

Hart has not pointed to evidence to show that there is a genuine dispute of material fact as to whether Robinson had "nearly identical" circumstances. Sunbelt has presented undisputed evidence that, at the time of the challenged employment decision, Robinson was more engaged in his work and had greater job responsibilities, including responsibilities that were previously Hart's.[31]

For example, there is an undisputed record that Hart's email volume steadily declined as he approached his retirement date, a metric of his disengagement.[32]  By contrast, Robinson had a consistent amount of email volume during that time.[33]  Further, Sunbelt CEO Scott Jackson testified that he repeatedly reached out to Hart, hoping to meet with Hart in Houston, Texas

---

[31]    R. Doc. 26-4 at 43, 58, 61.
[32]    R. Doc. 26-13 at 2.
[33]    R. Doc. 26-14 at 2.

and in Luling, Louisiana during separate trips and that Hart did not meet with him.[34] Jackson testified that Hart's unwillingness to travel "was a concern because [the] Houston location was having significant problems."[35] Jackson testified that Hart was invited to the semi-annual leadership retreat for the company and did not attend.[36] Jackson testified that Robinson, by contrast, remained engaged in his position and began taking over Hart's duties in addition to his own duties as Hart neared his retirement date and became less engaged.[37] While Hart and Robinson both had locations with declining sales, Jackson testified that Robinson was "working actively to go remedy those locations, putting in place work plans" while Hart was "disengaged" and "not supporting in the turnaround."[38] In addition, at least one of Hart's team members resigned, citing poor leadership. [39]

Here, the evidence reflects that the difference in Hart's and Robinson's conduct accounts for the difference in treatment by Sunbelt. The difference in treatment does not support an inference that Hart's pay was modified

---

[34]    R. Doc. 26-4 at 68, 70.
[35]    *Id.* at 70.
[36]    *Id.* at 66.
[37]    *Id.* at 43, 58, 61.
[38]    *Id.* at 58.
[39]    *Id.* at 40, 43.

because of age discrimination.  *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

Second, Hart testified to Jackson's making one age-related comment as evidence of discriminatory intent.  According to Hart, in August 2024, Jackson stated that "he couldn't promote the future of the company until [he] got rid of some of the old timers."[40]  For a comment "to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the" challenged employer decision.  *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996).  Remarks "may serve as sufficient evidence of age discrimination if they are: 1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue."  *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 683 (5th Cir. 2001).

Hart has not pointed to evidence that the comment Jackson made meets these criteria.  While "old timers" could be considered age related and the comment was made by Jackson, who had authority over the decision to change Hart's incentive compensation plan, it does not meet the other

---

[40]    R. Doc. 32-6 at 11.

criteria.  First, Jackson made this comment in August 2024, months before the challenged employment decision here.[41]  Second, the comment is not related to the employment decision at issue.  This comment was made in response to Jackson's asking Hart to determine which of his reports were planning to retire soon and whether they would be interested in an early retirement package.[42]  The comment does not mention Hart or his incentive compensation package.  The decision as to Hart's compensation package was not to get rid of an "old timer"; Hart had informed Jackson of his decision to retire at least eight months before the comment at issue.[43]  The comment was neither proximate in time nor related to the employment decision at issue. It does not support a finding that Sunbelt's reason for modifying Hart's incentive pay was pretextual.

Third, Hart points to the timing of the challenged employment decision.  Hart asserts that because Jackson reduced his incentive compensation eleven days after Hart emailed his notice of retirement, the timing supports an inference of causation.[44]  The timing here does not give rise to an inference of pretext.  It is undisputed that Hart told Jackson in January 2024 that he

---

[41]     R. Doc. 32 at 12.
[42]     R. Doc. 26-3 at 102.
[43]     *Id.* at 60.
[44]     R. Doc. 32 at 3.

was going to retire a year later. [45]  That the challenged employment action took place after Hart emailed Jackson about his retirement does not change that Jackson had known about Hart's planned retirement for eleven months and made no adverse employment decisions.  The period of eleven months between Hart's announcement of his retirement and the adverse employment action is insufficient to support an inference of causation.  *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (nothing that the temporal proximity required for an inference of causation must be "very close").

Fourth, as to "shifting reasons," the Fifth Circuit has held that "*incon- sistent* reasons offered at different times can create a fact issue of pretext." *Minnis v. Bd. of Supervisors*, 620 F. App'x 215, 220 (5th Cir. 2015) (emphasis in original) (citing *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002)). [46]  The Fifth Circuit has concluded that "proof of an employer's reasons becoming more detailed as the dispute moves beyond the initial notice to an employee and enters into adversarial proceedings, is insufficient to create a jury question regarding pretext absent an actual inconsistency." *Id.*

---

[45]  R. Doc. 26-3 at 60.

[46]  One of the cases Hart points to in support of this proposition, *Harris v. FedEx Corp. Servs.*, 92 F.4th 286 (5th Cir. 2024) does not even mention shifting reasons.

Hart points to two reasons Sunbelt put forth for decreasing Hart's incentive pay.[47]  In Sunbelt's answer to the lawsuit, Sunbelt stated that Hart's compensation was adjusted because Hart's "assigned regions failed to meet sales targets and saw an 18-month revenue decline.  This decline couple[d] with a key direct report of Hart resigning led Defendant to adjust Plaintiff's variable compensation."[48]

During his deposition, Jackson testified that Hart's compensation was changed because of "attrition from [Hart's] team members as the leadership was not there" and the "lack of engagement," which resulted in Jackson's need to "pull in additional resources to support [Hart's] territory."[49] Jackson also testified that he considered "declining performance" in Hart's locations.[50]

The reasons Jackson cited for reducing Hart's incentive compensation in his deposition are consistent with the reasons Sunbelt offered in their

---

[47]    Hart also points to Sunbelt's response to Hart's EEOC complaint, but Sunbelt's response to Hart's EEOC complaint is not in the record.  The citation Hart provides for Sunbelt's response in the record is not a response to the EEOC, but an email from Sunbelt's HR specialist with documents Hart could need for his last day.  R. Doc. 32-8 at 1.  The Court cannot consider evidence that is outside of the summary judgment record.

[48]    R. Doc. 12 at 5.

[49]    R. Doc. 26-4 at 40, 43.

[50]    *Id.* at 54.

18

answer to the lawsuit. In both, Sunbelt pointed to the declining profitability of the branches Hart oversaw and a key direct report resigning. That Sunbelt's reasons are more detailed in a many-hours long deposition than in one paragraph of Sunbelt's answer does not make the reasons inconsistent. *See Minnis*, 620 F. App'x at 220. Sunbelt's answer and Jackson's deposition are consistent and do not raise a genuine issue of fact on pretext. Hart has presented no evidence contradicting Jackson's claims that Hart was losing team members, that a key report resigned, that other individuals were having to take over Hart's work, that Hart was not engaged with locations that were performing poorly, and that he was not responsive to email or attending meetings. Hart has pointed to no evidence in the record that suggests that Sunbelt's articulated reasons for changing his incentive pay were false.

In deciding whether to grant summary judgment, the Court considers "the probative value of the proof that the employer's explanation is false" and any "evidence that supports the employer's case." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting first *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577-78 (5th Cir. 2020); then *Harville v. City of Houston, Miss.*, 945 F.3d 870, 878-79 (5th Cir. 2019)). "'Merely disputing' the employer's assessment of the plaintiff's work performance 'will not necessarily support an inference of pretext.'" *Id.* quoting *Shackelford v. Deloitte*

*& Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999). Hart has not produced "evidence from which a jury could conclude that [the defendant's] articulated reason is pretextual." *Nall*, 917 F.3d at 342. Because Hart failed to carry his burden of pointing to genuine disputes of material fact on pretext, his claim cannot survive under the *McDonnell Douglas* framework. Consequently, Sunbelt is entitled to summary judgment on Hart's employment discrimination claim as a matter of law.

### b. Louisiana Age Discrimination Claim

Hart also makes an age discrimination claim under Louisiana's Employment Discrimination Law (LEDL), La. R.S. 23:311-314. With respect to claims of age discrimination, the LEDL is modeled after federal law and should be construed in light of federal precedent. *See, e.g.*, *O'Boyle v. La. Tech Uni.*, 741 So. 2d 1289, 1290 (La. App. 2 Cir. 1999) (holding that the Louisiana Act "mirrors the federal ADEA and should be construed in light of federal precedent"). Indeed, Louisiana courts apply the same *McConnell Douglas* burden-shifting framework when analyzing claims of age discrimination under the Louisiana law. *See Taylor v. Oakbourne Country Club*, 663 So. 2d 379, 383-84 (La. App. 3 Cir. 1995). For the reasons stated above entitling Sunbelt to summary judgment on Hart's federal age discrimination claim,

Sunbelt is entitled to summary judgment on Hart's claim under the Louisiana Age Discrimination in Employment Act.

### c. Louisiana Wage Payment Act Claim

Hart also makes a claim under the Louisiana Wage Payment Act (LWPA) for unpaid wages, penalty wages, and attorneys' fees. The LWPA, La. R.S. 23:631, requires employers to pay employees the amount then due under the terms of employment no later than fifteen days from the date of the termination of employment.

To recover under La. R.S. 23:632, the employee must establish: 1) that the defendant was his employer; 2) that the employee/employer relationship ceased to exist; 3) that at the time the employer/employee relationship ended, the employee was owed wages; and 4) that the defendant failed to submit the owed wages within the required 15 days. *Dillon v. Toys R Us-Del. Corp.*, 221 So. 3d 876, 879 (La. App. 4 Cir. 2017). To recover penalty wages, the employee must show: 1) that wages were due and owing, 2) that demand for payment was made, and 3) that the employer did not pay upon demand. *Steak v. Hat World, Inc.*, 191 So. 3d 712, 715 (La. App. 4 Cir. 2016). The burden of proof rests upon the employee to show by a preponderance of the evidence the facts that establish his claim for wages and penalties under La.

R.S. 23:631 and 23:632.  *Calamia v. Core Labs., LP*, 249 So. 3d 1038, 1042 (La. App. 5 Cir. 2018).

Here, it is undisputed that Sunbelt was Hart's employer, that the employer/employee relationship ceased to exist, that Hart made a demand for payment to Sunbelt, and that Sunbelt did not pay Hart.  The disputed element of Hart's case is whether "wages" were due and owing.

Hart was paid his base salary in full through the day he retired.  In addition, for the months of October, November, and December 2024, Hart was paid an incentive payment of $5,000 a month.[51]  Hart did not receive an incentive payment for the month of January 2025, in accordance with company policy, because Hart was no longer employed on the date that the incentive payments were made.  There are no material facts in dispute.  The two legal issues remaining are (a) whether the difference between incentive payments Hart expected and those he received were wages "due and owing" and (b) whether Sunbelt's present-to-earn policy is unenforceable as a matter of public policy.

The LWPA was amended in 2024 to directly address commissions, incentive pay, and bonus.  La. R.S. 23:631(E).

In full, La. R.S. 23:631(E) provides:

---

[51]    R. Doc. 32-9.

(1)    For purposes of this Section and R.S. 23:634, compensation available in the form of commission, incentive pay, or bonus shall be considered an amount then due only if, at the time of separation, the compensation has been earned and not modified in accordance with a written policy addressing the commission, incentive pay, or bonus.

(2)    The following provisions shall be lawful:

(a) A policy providing for adjustments to the amount based on changes to the order generating a commission which affects the amount of the commission.

(b) A policy providing that a payment to the laborer or employee is not earned unless and until the employer has received the payment which generates the commission, incentive pay, or bonus.

(3)    In the case of a bonus, the amount of which is determined by financial information reflecting the employee's or employer's performance on an annual, quarterly, or other periodic basis, a reasonable amount of time, not to exceed one hundred twenty calendar days from the end of such periodic basis, shall be allowed based on standard accounting practices used by the employer to make the determination as to whether a bonus is due and the amount thereof.

La. R.S. 23:631(E).

Neither the parties nor the Court have identified a case, whether state or federal, interpreting La. R.S. 23:631(E).[52]  The Court considers interpreting the statute as a question of first impression.  Legislation is the solemn expression of the will of the legislature.  *Milbert v. Answering Bureau, Inc.,*

---

[52]    R. Doc. 26-2 at 16 n.3.

120 So. 3d 678, 684 (La. 2013) (citing La. C.C. art. 2; *First Nat. Bank v. DDS Const.*, 91 So. 3d 944, 953 (La. 2012)).  The court starts with the language of the statute to determine the legislature's will, and the words must be interpreted as they are generally understood.  *Id.*  When the words of a statute are clear and unambiguous, and the application of the law does not lead to absurd consequences, the statute is applied as written without further effort to determine the legislature's intent.  *Id.*

The parties offer conflicting interpretations of the statute.  Sunbelt asserts that it modified Hart's incentive compensation in accordance with a written policy addressing the incentive pay, which gave Sunbelt the right to modify individual payouts as warranted.  Sunbelt argues that the disputed incentive payments thus do not qualify as an "amount due" within the language of the statute.  Hart argues that the language in 631(E)(2)(a)-(b) provides the only two permissible policies under which a commission, incentive pay, or bonus could be modified and thus that Sunbelt's policy violates the provisions of 23:631(E).

Applying the plain language of the statute, the Court finds that the payments for October, November, and December 2024 were not an "amount due" within the language of the statute.  The statute provides that a "commission, incentive pay, or bonus" is an amount then due "*only if*" it was

earned and not modified in accordance with a written policy. La. R.S. 23:631(E)(1) (emphasis added). While La. R.S. 23:631(E)(2) provides that certain provisions regarding the payment of incentive payments, bonuses, and commissions would be lawful, it does not provide that only those provisions would be lawful. The Court declines to read into the statute language that only the two listed policies are permissible and instead applies the statute "as written." *Milbert*, 120 So. 3d at 684.

It is undisputed that in each communication to Hart about his incentive payments, there was a written policy stating that Sunbelt "reserves the right to change, revise, or terminate the incentive plan at any time."[53] Further, as of March 2024, before any of the disputed payments were arguably due, the incentive plan included the language that Sunbelt reserved the right to "make changes to individual payouts as warranted."[54] Hart was clearly made aware as of March 2024 of Sunbelt's written policy that not only could Sunbelt change the incentive program at any time, but it could also modify individual payouts as warranted.[55]

Here, Sunbelt made changes to Hart's individual payouts for October, November, and December 2024 in accordance with a written policy before

---

[53]   R. Docs. 25-3 at 2; 25-4 at 1; 25-5 at 1.
[54]   R. Doc. 32-3 at 1.
[55]   R. Docs. 32-3; 32-4 at 2.

Hart's retirement.  The written policy provided Sunbelt the right to "make changes to individual payouts as warranted."[56]  Sunbelt made changes to Hart's individual payouts "as warranted."  The payments for October 2024, November 2024, and December 2024 were therefore not an amount due at the time of his separation under the LWPA.  The plan was subject to change, and benefits were not guaranteed under the plan.  Nor was Hart's consent required to modify the plan or incentive payments made under it.

It is the employee's burden to show any unpaid bonus amount was due under the terms of his employment.  At this stage, Hart needs to point to evidence that creates a genuine dispute of material fact as to whether Sunbelt failed to pay him an amount due under the statute.  Hart cannot do so here, as the terms of his employment specifically provide in writing that Sunbelt could make changes to individual payouts as warranted.  The Court thus grants summary judgment for Sunbelt as to Hart's claims for payments for October, November, and December 2024.

In addition to the arguments rejected above, Hart argues that, as to the incentive payment for January 2025, Sunbelt's policy that an employee must be employed on the date the payment is due is unenforceable as a matter of public policy.  Sunbelt's present-to-earn policy states that the "employee's

---

[56]    R. Doc. 25-5 at 1.

eligibility to earn any future payment under any plan shall cease on the final day of employment, except to the extent prohibited by applicable law."[57] The present-to-earn policy had been included in Hart's offer letter from Sunbelt in 2017 and in every subsequent communication about the incentive compensation plan before the Court.[58]

La. R.S. 23:634 provides that employers may not require "employees to sign contracts by which the employees shall forfeit their wages if discharged" or if they resign "before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation." La. R.S. 23:634. La. R.S. 23:634 was, alongside the LWPA, "designed to ensure the prompt payment of wages upon an employee's discharge or resignation." *Beard v. Summit Inst. of Pulmonary Med. & Rehab., Inc.*, 707 So. 2d 1233, 1235 (La. 1998) (quoting *Boudreaux v. Hamilton Medical Group, Inc.*, 644 So. 2d 619, 622 (La. 1994). Before the 2024 amendments to the LWPA, courts in Louisiana held various present-to-earn provisions unenforceable as a matter of public policy under La. R.S. 23:634. *Morse v. J. Ray McDermott & Co.*, 344 So. 2d 1353, 1368 (La. 1976) (finding "forfeiture clause. . . manifestly unjust" when the

---

[57]    R. Doc. 32-3; *see also* R. Doc. 32-4 at 2.
[58]    *Id.*

employee was prevented from performing his part of the bargain by unilateral act of the employer); *see also Beard*, 707 So. 2d at 1233 (finding a requirement that employee forfeit all accrued benefits upon voluntary resignation unenforceable in light of La. R.S. 23:634).

Section 23:631(E) of the LWPA as amended does not specifically address present-to-earn policies. The Court finds that the 2024 addition of 23:631(E) to the LWPA does not change the law on present-to-earn provisions. This follows because La. R.S. 23:634 remains an express legislative statement that such clauses are unenforceable. The jurisprudence interpreting present-to-earn clauses as unenforceable under La. R.S. 23:634 does not permit such policies, even if incentive payments are modified according to a written present-to-earn policy.[59]

Sunbelt has pointed to only one reason for Hart's non-receipt of any payment for January 2025: that Hart was no longer employed with Sunbelt on the date of the payment.[60] While Sunbelt stated in its statement of facts

---

[59] The legislature considered amending the LWPA in 2024 to statutorily override the jurisprudence finding present-to-earn clauses violative of public policy but did not do so. *Compare* H.B. 352 Original, Regular Sess. (La. 2024) *to* Act 556, Regular Sess. (La. 2024), https://legis.la.gov/legis/BillInfo.aspx?i=246035352.

[60] R. Doc. 25-6. "Since your retirement will be January 31st, there will not be a sales contribution bonus paid in February since you will no longer be employed by the company."

that Sunbelt modified Hart's payment to $0 under their modification policy, there is no evidence in the record supporting that claim. Instead, the record evidence is consistent that the only policy Jackson relied upon to change Hart's payment was the present-to-earn policy.[61] Unlike the other challenged payments, Sunbelt did not modify the January payment in accordance with a lawful written policy. Sunbelt has thus failed to pay Hart an amount he was owed for January 2025, in violation of the LWPA.

Finding no genuine dispute of fact, Hart is entitled to summary judgment as a matter of law on his claim for the January 2025 sales contribution percentage. Absent a valid modification, the Court finds that Sunbelt owes Hart a sales contribution percentage of 0.64% for January 2025.[62] Sunbelt thus owes Hart $17,743.11 for January 2025.[63]

As Hart did not move for penalty wages and attorneys' fees in his motion for partial summary judgment, the Court does not reach those claims.

## IV.   CONCLUSION

The Court GRANTS defendant's motion for summary judgment on plaintiff's claims under the ADEA and LEDL. Plaintiff's claims under the ADEA and LEDL are DISMISSED WITH PREJUDICE.

---

[61]   *Id.*
[62]   R. Doc. 25-5 at 1.
[63]   R. Doc. 25-10 at 1.

29

As to Hart's claims under the LWPA, the Court GRANTS Sunbelt's motion for summary judgment and DENIES Hart's motion for summary judgment on the payments for October, November, and December 2024. Plaintiff's claims for incentive payments for October, November, and December 2024 are DISMISSED WITH PREJUDICE.

The Court GRANTS plaintiff's motion and DENIES defendant's motion as to the payment for January 2025. Plaintiff is entitled to incentive compensation for the month of January 2025 in the amount of $17,743.11.

New Orleans, Louisiana, this 8th day of July, 2026.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

30