UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GARY HART

CIVIL ACTION

VERSUS

NO. 25-1548

SUNBELT SUPPLY, L.L.C.

SECTION R (1)

## ORDER AND REASONS

Before the Court is plaintiff Gary Hart's motion for reconsideration of the Court's order partially granting defendant Sunbelt's motion for summary judgment.[1] For the following reasons, the Court denies plaintiff's motion for reconsideration.

## I.   BACKGROUND

The undisputed facts are as follows. Gary Hart began working for Sunbelt[2] in July 2017.[3] When Hart joined Sunbelt, he received base compensation, a signing bonus, and incentive compensation.[4] The incentive compensation was a return on invested capital plan tied to the branch sales performance.[5] Hart's offer letter includes language that "[Hart] must be

---

[1]   R. Doc. 47.
[2]   For simplicity, the Court refers to Hart's employer as Sunbelt throughout. Sunbelt Supply co. is a fictitious name used by FloWorks USA L.P. R. Doc. 10.
[3]   R. Doc. 32-4 at 2.
[4]   *Id.*
[5]   *Id.*

actively employed on the date [incentive] payments are made to receive the award.   [Sunbelt] reserves the right to change, revise or terminate the incentive plan at any time."[6]  As of January 2024, Hart had informed Scott Jackson, the President of Sunbelt, that he intended to retire in January 2025.[7]

From January 2024 until his retirement in January 2025 at the age of 67, Hart served as one of two Regional Directors for Sunbelt.[8]  In that role, Hart received a base salary and incentive-based variable compensation.[9]  In March 2024, Sunbelt modified the incentive compensation plan.[10]  The incentive compensation plan changed from the return on invested capital plan to a sales contribution percentage plan.[11]  The March 2024 incentive compensation plan letter included language that Sunbelt could "change revise, or terminate" the incentive-based compensation at any time and "make changes to individual payouts as warranted."[12]  The incentive plan contained language that the "employee's eligibility to earn any future

---

[6]     R. Doc. 26-9 at 2.
[7]     R. Doc. 26-4 at 39.
[8]     R. Doc. 32-2 at 1.
[9]     R. Docs. 32-2; 32-3.
[10]    R. Doc. 26-10 at 2.
[11]    *Id.*
[12]    *Id.*

payment under any plan shall cease on the final day of employment, except to the extent prohibited by applicable law."[13]

On November 1, 2024, Hart sent a formal, written notice of his intent to retire on January 31, 2025.[14] Ten days later, on November 11, 2024, Jackson informed Hart on a phone call that Hart's incentive compensation to be paid for October, November, and December 2024[15] would be $5,000 instead of the sales contribution percentage.[16] Hart emailed Jackson following the phone call, clarifying the change in incentive contribution.[17] Jackson confirmed the change and noted that Hart would not be paid incentive compensation for January because he would no longer be employed with Sunbelt on the payout date in February 2025.[18] Hart continued in his position as Regional Director until his retirement. Three days before his retirement, he emailed Jackson, demanding full compensation under the incentive-based plan for October, November, and

---

[13]    *Id.*
[14]    R. Doc. 32-4.
[15]    The Court throughout refers to payments "for October," etc. The payment "for October 2024" is the payment that would be made in November 2024 based on October's sales data in accordance with Sunbelt's payment policies.
[16]    R. Doc. 32-7 at 4.
[17]    R. Doc. 32-5 at 2.
[18]    R. Doc. 26-11 at 3.

December 2024, and January 2025, seeking $36,769.02 plus a commission from January sales once known.[19]  Jackson did not respond to that email.

On March 6, 2025, Hart filed a charge of discrimination with the EEOC for age discrimination.  The EEOC issued a right to sue letter to Hart on June 26, 2025.[20]  Hart then sued in this Court on July 29, 2025, asserting federal question jurisdiction over his federal age discrimination claims.[21]  In addition, Hart brought claims under the Louisiana Employment Discrimination Law (LEDL) and the Louisiana Wage Payment Act (LWPA), asserting supplemental jurisdiction.[22]

Sunbelt moved for summary judgment on each of Hart's claims.[23]  Hart moved for partial summary judgment as to his Louisiana Wage Payment Act claim.[24]  The Court granted Sunbelt's motion regarding Hart's age discrimination claims and dismissed the claims with prejudice.[25]  As to Hart's LWPA claims, the Court granted Sunbelt's motion and denied Hart's motion for summary judgment on the payments for October, November, and December 2024, dismissing Hart's claims for those months with prejudice.

---

[19]     R. Doc. 32-9 at 1.
[20]     R. Doc. 1 at 2.
[21]     R. Doc. 1.
[22]     *Id.*
[23]     R. Doc. 26.
[24]     R. Doc. 25.
[25]     R. Doc. 45 at 29.

The Court granted Hart's motion and denied Sunbelt's motion regarding the payment for January 2025.

Before the Court is Hart's opposed motion under Fed. R. Civ. P. 54(b) for reconsideration of the Court's grant of summary judgment to Sunbelt on the LWPA claim for the payment for October.[26]  The Court considers the motion below.

## II.    LEGAL STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure provides that an order that adjudicates fewer than all of the claims among the parties "may be revised at any time" before the entry of a final judgment.  Fed. R. Civ. P. 54(b).  As Rule 54 recognizes, a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."  *Melancon v. Texaco*, 659 F.2d 551, 553 (5th Cir. 1981).  Under Rule 54(b), a court "is free to reconsider and reverse its decision for any reason it deems sufficient."  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).

Rule 54(b) imposes a less stringent standard for reconsideration than Rule 59(e).  *Id.* at 336–37.  Courts may reconsider and reverse their decisions

---

[26]    R. Doc. 47.

under Rule 54(b) "even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* at 336.

## III.   DISCUSSION

Here, plaintiff seeks reconsideration of this Court's order granting partial summary judgment to defendant.  Plaintiff's motion is limited to the portion of the Court's order granting summary judgment to defendant for the October payment.[27]  The parties agree that, because the Court's July 8 Order did not resolve all of the claims between the parties, the Order is interlocutory, and Rule 54(b) governs the motion for consideration.[28]

In support of his motion for reconsideration, plaintiff asserts that the October payment was already fully earned by the time of the November 11 modification.[29]  Thus, Sunbelt's retroactive modification caused plaintiff to "forfeit" the October payment, violating La. R.S. 23:634.[30]

La. R.S. 23:634 provides that employers may not require "employees to sign contracts by which the employees shall forfeit their wages if discharged," or if they resign "before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to

---

[27]    R. Doc. 47.
[28]    *Id.*; R. Doc. 52 at 3–4.
[29]    R. Doc. 47-1 at 2.
[30]    *Id.* at 5.

6

the time of their discharge or resignation." La. R.S. 23:634. The Court acknowledged in its July 8 Order that La. R.S. 23:634 "remains an express legislative statement that [present-to-earn] clauses are unenforceable."[31]

Plaintiff argues that his October commission was "actually earned" by the time of the November 11 modification because the October commission was calculated based on his sales made during the month of October.[32] According to Plaintiff, his commission was "actually earned" on October 31, 2024, and any modification of the payment from that point forward amounted to a forfeiture in violation of La. R.S. 23:634.[33]

But the plain text of La. R.S. 23:631(E)(1) makes clear that whether plaintiff's commission was "actually earned" is not dispositive. Rather, the statute provides a second prerequisite: commissions are due "only if, at the time of separation, the compensation has been earned *and* not modified in accordance with a written policy addressing the commission." La. R.S. 23:631(E)(1) (emphasis added).

While plaintiff focuses on the first requirement of La. R.S. 23:631(E)(1), he has no response to the second. Even assuming that plaintiff's October commission was "actually earned" by the time of the

---

[31]    R. Doc. 45 at 28.
[32]    R. Doc. 52 at 11
[33]    R. Doc. 47-1 at 11.

7

November 11 modification, Sunbelt's written policy addressed the October commission. The March 2024 policy explicitly stated that Sunbelt could "change, revise, or terminate" the incentive-based compensation at any time and "make changes to individual payouts as warranted."[34] So Sunbelt's November 11 modification of the October payment, even if retroactive, was "in accordance with a written policy addressing the commission." La. R.S. 23:631(E).

Plaintiff argues that the Court's finding that "Sunbelt did not modify the January payment in accordance with a **lawful** written policy" must mean that the November 11 modification of the October payment was also unlawful.[35] This confuses the Court's reasoning. The Court held that the modification of the January payment was not in accordance with a lawful written policy because Sunbelt's policy that an "employee's eligibility to earn any future payment under any plan shall cease on the final day of employment" amounted to an illegal "present-to-earn" policy.[36] But the modification of the October payment was not pursuant to Sunbelt's "present-to-earn" policy. Sunbelt modified the October payment under its policy that it could "change, revise, or terminate" the incentive-based compensation at

---

[34]   R. Doc. 26-10 at 2.
[35]   R. Doc. 54 at 7–8 (emphasis in original).
[36]   R. Doc. 45 at 28–29.

any time and "make changes to individual payouts as warranted."[37] The Court's ruling on the January payment does not affect this modification.

Plaintiff then asserts that reading La. R.S. 23:631(E) to allow the November 11 modification of the October payment would "nullify [the] statutory text" of La. R.S. 23:634.[38] For support, plaintiff relies on forfeiture cases interpreting the LWPA before the enactment of La. R.S. 23:631(E).[39] But Plaintiff cites no case holding that the retroactive modification of a commission payment is illegal under La. 23:634, nor is the Court aware of one. Plaintiff also points to the legislative history behind La. R.S. 23:631(E), but again, nowhere in this history does the legislature suggest that the retroactive modification of a commission is illegal under La. R.S. 23:634. While legislators discussed how commissions could not be withheld at termination, plaintiff was not terminated on November 11. Rather, Sunbelt modified plaintiff's October commission on November 11 pursuant to its written policy allowing such modifications.

Plaintiff's reading of the LWPA also fails to account for La. R.S. 23:631(E)(2) and (3). La. R.S. 23:631(E)(2) explicitly allows for policies that retroactively affect the amounts of commissions based on future events.

---

[37]    R. Doc. 26-10 at 2.
[38]    R. Doc. 54 at 3.
[39]    R. Docs. 47-1 at 8–11; 54 at 6–8.

And La. R.S. 23:631(E)(3) provides that bonus amounts may be determined by employers several months after the pay periods during which the corresponding labor was performed. These provisions reflect that the legislature did not view such action as amounting to illegal forfeiture under La. R.S. 23:634.

In interpreting a statute, the Court must "start with the plain text, and read all parts of the statute together to produce a harmonious whole." *Doe v. KPMG, LLP*, 398 F.3d 686, 688 (5th Cir. 2005). The plain text of La. R.S. 23:631(E) makes clear that a commission must be "earned *and* not modified in accordance with a written policy" to be considered an amount then due. La. R.S. 23:631(E) (emphasis added). Sunbelt modified the October payment in accordance with the portion of its written policy that was not an illegal present-to-earn provision. As such, the October payment was not an amount due under La. R.S. 23:631(E).

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion for reconsideration.

New Orleans, Louisiana, this  6th  day of August, 2026.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE